IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SYLVESTER JENNINGS, JR.                                           PLAINTIFF

No. 3:11-CV-00281-BD

MICHAEL J. ASTRUE, Commissioner,                         DEFENDANT
Social Security Administration

ORDER AFFIRMING THE COMMISSIONER

Sylvester Jennings, Jr., sought judicial review of the denial of his application for

disability insurance benefits.  Mr. Jennings based disability on carpal tunnel syndrome,

neck pain, and hearing loss.[1]  Mr. Jennings last worked as a laborer for the state

highway department.  He retired after a July 2006 on-the-job injury sustained in a motor

vehicle accident.  The vehicle Mr. Jennings drove was rear-ended by another vehicle.[2]

The record does not include Mr. Jennings's application, but according to the

parties, Mr. Jennings alleged he was disabled beginning in March 2007.  That date

somewhat corresponds with Mr. Jennings's neck surgery in February 2007.[3]

---

[1]SSA record at p. 127.

[2]Mr. Jennings received workers compensation benefits until 2010.

[3]*Id*. at 260 (Feb. 20, 2007 discharge summary for neck surgery).

Mr. Jennings alleged disability once before.[4]  The Commissioner denied that

application on December 31, 2009.  Because he did not seek judicial review of that

decision, the earliest Mr. Jennings could have received benefits was January 1, 2010,[5]

despite an alleged on-set date of March 23, 2007.

**The Commissioner's decision**.  After considering Mr. Jennings's application, the

Commissioner's ALJ determined that although Mr. Jennings had severe impairments—

bilateral carpal tunnel syndrome, status post carpal tunnel release bilaterally, cervical

spondylolisthesis, and status post anterior cervical diskectomy and fusion—Mr.

Jennings could do a reduced range of light work.[6]  Because the vocational expert

identified jobs a person with Mr. Jennings's residual functional capacity (RFC) could

do,[7] the ALJ concluded that Mr. Jennings was not disabled under the Social Security Act

---

[4]*Id*. at p. 109 (indicating prior application was denied by the Commissioner's appeals council on Dec. 31, 2009).

[5]*Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997) ("The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings...;" the doctrine applies to administrative decisions).

[6]*Id*. at p. 14 (determining that because of lowered concentration flowing from pain, Mr. Jennings could do unskilled work; lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit 6 hours in an 8-hour day; but no pushing or pulling with the right arm; and only occasional overhead reaching).

[7]*Id*. at p. 40.

and denied the application.[8]  After the Commissioner's Appeals Council denied Mr.

Jennings's request for review,[9] the ALJ's decision became a final decision for judicial

review.[10]  Mr. Jennings filed this case to challenge the ALJ's decision.[11]

**Asthma and right knee pain**.  Mr. Jennings did not allege disability based on

asthma or his right knee, but he complains that the ALJ should have found those

conditions were severe impairments.[12]  He maintains that the record contained sufficient

evidence to show that asthma and his right knee affected his ability to work.

At step two of the disability-determination process, the ALJ determined that

asthma and the right knee problems were not severe impairments.  At step two, the ALJ

considers the medical severity of the claimant's impairments.[13]  Because he maintains

that asthma and the right knee were severe impairments, Mr. Jennings now challenges

the ALJ's step-two determination.

_____

[8]*Id*. at p. 17.

[9]*Id*. at p. 1.

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 2.

[12]Docket entry # 16, pp. 31-32.  Mr. Jennings's brief read "light knee pain," but Mr. Jennings's argument indicated he meant "right knee pain."

[13]20 C.F.R. 404.1520(a)(4)(ii) (DIB).

Mr. Jennings's step-two argument provides no basis for relief because step two directs a conclusion of "non-disabled" if the claimant fails to prove a severe impairment. The process weeds out claimants whose abilities to work are not significantly limited.[14] If the claimant meets his step-two burden, there can be no reversible error where the record shows the ALJ considered all of the medical evidence and all of the claimant's impairments.

Mr. Jennings met his burden to show a severe impairment, so his applications proceeded to step three. The record shows the ALJ considered all of the medical evidence and all of Mr. Jennings's impairments. Even if asthma and the right knee were severe, no harm flowed from finding they were not severe because Mr. Jennings proceeded to the third step.

**Credibility**. Mr. Jennings alleged he suffered disabling pain such that he could do no work. He challenges the ALJ's assessment of the credibility of his allegation.[15] He maintained that his work history and pain management background support his allegation.

---

[14]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (concurring and stating that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

[15]Docket entry # 16, pp. 32-34.

An ALJ has a statutory duty "to assess the credibility of the claimant and other witnesses."[16]  To evaluate Mr. Jennings's credibility, the ALJ followed the required two-step process[17] and considered the required factors.[18]  Thus, the question before the court is whether substantial evidence supports the ALJ's credibility assessment.  A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."[19]

A claimant need not be bed-ridden or unable to perform chores to suffer disabling pain,[20] but independent participation in a wide variety of daily activities contradicts an allegation of disabling pain.[21]  The record indicates that Mr. Jennings

---

[16]*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[17]*See Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).

[18]In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  See SSR 96-7p,Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements.

[19]*Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

[20]*Miller v. Sullivan*, 953 F.2d 417, 421 (8th Cir. 1992).

[21]*Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (testimony that claimant cared for at least one of six children on a daily basis, drove a car when unable to find a ride, and went to the grocery store contradicted allegation of disabling pain); *Nguyen v. Chater*, 75

engaged in a wide variety of activities without assistance from others.  In discounting the credibility of the allegation of disabling pain, the ALJ relied in part on Mr. Jennings's daily activities, which included taking care of his children and his personal needs, driving, and chores.

In addition, the ALJ correctly observed that in July 2011, Mr. Jennings's treating orthopedist reported that Mr. Jennings felt much better and that pain no longer woke him from sleeping.  The physician opined that Mr. Jennings could engage in moderate activity.[22]  The record suggests that Mr. Jennings had already engaged in moderate activity as he had fallen off a trailer six months earlier.[23]  The reported purpose of the trailer was to haul a backhoe.  These reasons were sufficient to support the ALJ's

---

F.3d 429, 431 (8th Cir. 1996) (testimony that claimant visited neighbors, cooked her own meals, did her own laundry, and attended church did not support allegation of disabling pain from osteoarthritis); *Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (daily activities of carrying out the garbage, carrying grocery bags, driving wife to and from work, coupled with failure to use prescription pain medication, was inconsistent with allegation of extreme, persistent, and disabling pain); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (testimony that claimant sometimes needed help with the household cleaning and other chores, visited friends and relatives, and attended church was inconsistent with claimant's allegation of nearly unbearable pain in both of knees "mostly all the time"); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (testimony that claimant lived by herself, drove in her car, shopped for groceries, and did her housework with help from a neighbor was substantial evidence supporting ALJ's credibility evaluation).

[22]SSA record at p. 559-60.

[23]*Id*. at pp. 518 & 556.

credibility assessment.  A reasonable mind would accept the evidence supporting these reasons as adequate to support the conclusion that Mr. Jennings over-stated the severity of his pain.  Thus, substantial evidence supports the credibility assessment.[24]

**RFC**.  Mr. Jennings also argues that the ALJ over-estimated his RFC.[25]  He maintains that the medical evidence showed his limitations were far more extensive than determined by the ALJ.  He argues that he was also limited by his left arm and shoulder, right knee, and hands.

"A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence."[26]  Although he had twice applied for disability benefits, Mr. Jennings told his neck specialist that he wanted to return to heavy work, but that his left shoulder bothered him.[27]  Three

---

[24]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[25]Docket entry # 16, pp. 34-36.

[26]*McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

[27]SSA record at p. 553.

months later, a shoulder specialist recommended a 10% impairment rating for the left

shoulder.[28]   Mr. Jennings later reported that his left shoulder was somewhat better.[29]

 The failure to expressly address the impairment rating in the unfavorable

opinion provides no basis for relief because the ALJ included occasional overhead

reaching in the hypothetical question asked of the vocational expert.[30]   Considering Mr.

Jennings reported that overhead activity caused pain,[31] the limitation to occasional

overhead reaching accommodated impairment flowing from the left shoulder.

 Mr. Jennings's argument about his right knee flowed from a February 2004

injury.[32]   The injury occurred while Mr. Jennings worked his part-time job.   Mr. Jennings

underwent surgery to the right knee.   His surgeon later opined that the injury resulted

in a 2% permanent impairment to the right leg.[33]

 Despite the impairment, Mr. Jennings continued to work full-time for the state

highway department for two years until the motor vehicle accident.   He sought no

---

[28]*Id*. at p. 492 (4% for extension, 2% for internal rotation, and 3% for external rotation, for total of 10% for left arm).

[29]*Id*. at p. 570.

[30]*Id*. at p. 40.

[31]*Id*. at p. 559 (reporting that overhead activity caused shoulder pain).

[32]*Id*. at p. 169.

[33]*Id*. at p. 177.

treatment for his right knee until February 2010.[34]  At that time, x-rays showed superficial spurring on the kneecap,[35] but nothing suggested further impairment.  Thus, no medical evidence supported a further reduction in RFC.

The problems with Mr. Jennings's hands flowed from carpal tunnel syndrome. After the carpal tunnel release on the right side, the surgeon reported that Mr. Jennings's right hand improved such that he was capable of light duty.[36]  After the carpal tunnel release on the left side, the surgeon reported that Mr. Jennings had reasonable grip strength in both hands and no muscle wasting.[37]

On the whole, the record contained evidence that a reasonable mind would accept as adequate to support the determination that Mr. Jennings could do a reduced range of light work.  After his neck surgery, the neck specialist reported that Mr. Jennings was doing well, with a little soreness in neck at times, but quite a bit of improvement.[38]  An MRI showed excellent decompressions with wide open foramen on both sides and no evidence of new nerve root entrapment.[39]  Although Mr. Jennings

---

[34]*Id*. at p. 443.

[35]*Id*. at p. 448.

[36]*Id*. at pp. 324-25.

[37]*Id*. at p. 397.

[38]*Id*. at p. 355.

[39]*Id*. at p. 346.

may have been unable to work pain-free, a reasonable mind would consider the evidence as sufficient to support the determination that Mr. Jennings could do a reduced range of light work.

Conclusion. Substantial evidence supports the ALJ's decision denying Mr. Jennings's application. The ALJ made no legal error. For these reasons, the court DENIES Mr. Jennings's request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

It is so ordered this 18th day of January, 2013.

_____

UNITED STATES MAGISTRATE JUDGE